**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

       Plaintiff,                        CASE NO. 15-20507
                                            HON. DENISE PAGE HOOD

v.

GARY EUGENE JACKSON,

       Defendant.
_____/

**ORDER GRANTING PETITION
FOR COMPASSIONATE RELEASE [ECF No. 40]**

## I. Introduction

On May 16, 2020, Defendant filed a Petition for Compassionate Release (the "Motion") [ECF No. 40], pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A)(i). Defendant asks the Court to modify his 48-month term of imprisonment to time served and to impose a special condition that he serve a period of home confinement on supervised release. The Government has filed a response in opposition to Defendant's Motion, and Defendant has filed a reply.

## II. Background

    A.    *Defendant's Criminal Activity*

Between 2010 and 2014, Defendant was the leader of a conspiracy that possessed with the intent to distribute or distributed five kilograms or more of cocaine

and one kilogram or more of heroin. To facilitate his drug trafficking, Defendant used and carried firearms, including at least one stolen weapon. Defendant's guideline range was 135-168 months. Because he provided substantial assistance in another investigation, however, the Government filed a motion for downward departure. The Court granted the motion, departed downward below the Government's recommendation of 76 months, and sentenced Defendant to 48 months imprisonment. Defendant began serving his sentence on August 22, 2017. Defendant's projected release date is February 12, 2021, and he is scheduled to be transferred to a residential reentry center ("RRC") on August 18, 2020. Following his release, Defendant is subject to 60 months of supervised release. He is currently incarcerated at FCI Elkton in Lisbon, Ohio.

  B. *Defendant's Medical Conditions*

Defendant cites his age (57 years old) and the fact that he suffers from diabetes and high blood pressure. In his reply brief, Defendant notes that:

> At the time of sentencing, Defendant was, inter alia, 57 years of age, obese, hypertensive with cardiovascular issues, with a breathing disorder, and microcytosis (constricted blood cells). In paragraph 42 of Defendant's Presentence Investigation Report, pretrial services stated:
>
>> The defendant is 5'9" tall, weighs 218 pounds, and has brown eyes and black hair. JACKSON **suffers from high blood pressure, high cholesterol, diabetes, gout, and hemorrhoids. As a result, he takes the following medications: 100 milligrams of Cozaar per day for his**

> **high blood pressure, two milligrams of Amaryl per day for his diabetes, ten milligrams of Bystolic per day for his high blood pressure**, five milligrams of Tradjenta per day for his diabetes, 10 milligrams of Jardiance per day for his diabetes, and 2000 international units (IU) of Vitamin D per day. The defendant denied any allergies. Currently, JACKSON is under the care of Dr. Steven M. Katzman. The probation department received medical records from Dr. Kat[z]man's office, which confirm the health conditions listed above. **However, the records also include the following health concerns: microcytosis, a condition in which the red blood cells are unusually small; obesity; and rare dyspnea, a condition in which a person struggles to breath[e]**.

Defendant's Reply Brief, at 6 (citing Presentence Investigation Report, at 11) (emphasis added).

    C.    *BOP Actions Related to Defendant's Release*

Prior to the Motion being filed on May 16, 2020, Defendant was moved to a quarantine unit inside FCI Elkton as a prisoner who qualified for early release based on his term of incarceration, age, and medical conditions. After Defendant filed the Motion and the Government responded, the Court was advised by the Probation Department that the BOP would be releasing Defendant on June 24, 2020 due to Covid-19. When the Court inquired of the parties on June 25, 2020 whether Defendant had been released, the Court was advised that "[u]nder its new guidelines relating to Covid," the BOP was not placing Defendant on home confinement and the "BOP now plans to Release Mr. Jackson to an RRC on August 1[8], 2020." As Defendant states in his reply, that release date to an RRC is the original date upon

which Defendant has been scheduled to be released to an RRC.

### III. Analysis

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows (emphasis added):

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—**the court**, upon motion of the Director of the Bureau of Prisons, or **upon motion of the defendant** after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, **may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)**, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> > (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i) therefore requires that a defendant must satisfy both the exhaustion requirement and demonstrate that "extraordinary and compelling reasons" warrant a reduction of his sentence.

It is undisputed that Defendant has exhausted his administrative remedies. On April 8, 2020, he asked the warden for compassionate release based on Covid-19 and

his diabetes/high blood pressure and that request was denied.

    A.    *Extraordinary and Compelling Reasons*

The United States Sentencing Commission has defined "extraordinary and compelling reasons." *See* U.S.S.G. § 1B1.13, comment n.1. There are extraordinary and compelling reasons for modification where "[t]he defendant is ... suffering from a serious physical or medical condition ... that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 comment n.1(A)(ii).

The Government contends that Defendant's medical conditions do not satisfy the requirements in U.S.S.G. § 1B1.13(1)(A) & cmt. n.1, but the Court disagrees. Defendant suffers from diabetes and high blood pressure. The World Health Organization and the Center for Disease Control both recognize that diabetes constitutes an underlying health condition that presents a severe health risk to a person if infected with Covid-19. *See, e.g.,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (July 7, 2020)("CDC Guidelines"); https://www.who.int/westernpacific/emergencies/covid-19/information/high-risk-groups (July 7, 2020) ("WHO

Guidelines"). Persons with high blood pressure might be at an increased risk of severe illness if they contract Covid-19. *See* CDC Guidelines. The Court also notes that the Presentence Investigation Report specifies that one doctor diagnosed Defendant with "obesity and rare dyspnea, a condition in which a person struggles to breath[e]," both of which would constitute health conditions that heighten the risk of severe illness in the event of a Covid-19 infection. *Id.* Finally, although Defendant is not over 60 (another risk factor), he is nearly 60. *Id.*; WHO Guidelines.

The Court finds that Defendant is among those persons most at risk. This Court and others have held that compassionate release is justified under such conditions. *See, e.g., United Statest v. Saad,* No. 16-20197, ECF No. 66 (E.D. Mich. May 12, 2020); *United States v. Doshi*, No. 13-20349, ECF No. 145 (E.D. Mich. Mar. 31, 2020) (recommending that the BOP release 64 year old defendant with diabetes and hypertension to home confinement); *Perez*, 2020 WL 1546422, at *4 (the defendant was at risk of experiencing serious complications from COVID-19 due to medical complications arising from two vicious beatings while he was incarcerated); *Colvin*, 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020) (finding "extraordinary and compelling reasons justifying ... immediate release under Section 3582(c)(1)(A) and U.S.S.G. § 1B1.13" where defendant has "diabetes, a serious medical condition which substantially increases her risk of severe illness if she contracts COVID-19" (internal

quotation marks, citation, and alteration omitted)); *Rodriguez*, 2020 WL 1627331, at *7 (granting compassionate release where defendant was "in the higher risk category for developing more serious disease" if exposed to COVID-19 because he "has Type 2 diabetes mellitus with diabetic neuropathy, essential hypertension, obesity, and abnormal liver enzymes in a pattern most consistent with non-alcoholic fatty liver disease") (internal quotation marks and citations omitted); *United States v. Jepsen*, 19 Civ. 73, 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020) (granting compassionate release to defendant who "is immunocompromised and suffers from multiple chronic conditions that are in flux and predispose him to potentially lethal complications if he contracts COVID-19"); *United States v. Gonzalez*, No. 18 Cr. 1536155, 2020 WL 1536155, at *3 (approving compassionate release where defendant "is in the most susceptible age category (over 60 years of age) and her COPD and emphysema make her particularly vulnerable"); *United States v. Muniz*, 09 Cr. 199, 2020 WL 1540325, at *2 (finding extraordinary and compelling circumstances because "[d]efendant has been diagnosed with serious medical conditions that, according to reports from the Center[s] for Disease Control, make him particularly vulnerable to severe illness from COVID-19 ... includ[ing] inter alia, end stage renal disease, diabetes, and arterial hypertension."); *United States v. Campagna*, No. 16 Cr. 78-01, 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) (approving compassionate release for defendant where

his "compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify [d]efendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care").

For the reasons stated above, the Court finds that Defendant has demonstrated that extraordinary and compelling reasons justify a modification of his term of imprisonment.

The Government asserts that, even if Defendant's medical conditions and the Covid-19 pandemic satisfy the initial criteria for eligibility in USSG § 1B1.13 cmt. n.1, he remains ineligible for compassionate release because: (1) his offense and criminal history make him a danger to the community, *see* U.S.S.G. § 1B1.13(2); and (2) a weighing of the § 3553(a) factors support continued detention. The Government argues that Section 1B1.13(2) only permits release if a "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" and prohibits the release of violent offenders, including most drug dealers. Citing *United States v. Stone*, 608 F.3d 939, 947-48 & n.6 (6th Cir. 2010).

The Government believes that an evaluation of dangerousness under § 3142(g) requires a comprehensive view of community safety—"a broader construction than the mere danger of physical violence." *United States v. Cook*, 880 F.2d 1158, 1161

(10th Cir. 1989) (per curiam). For that reason, it claims that many "non-violent" offenders—such as those who have been involved in serial or significant fraud schemes—may not be released under § 3582(c)(1)(A). USSG § 1B1.13(2); *see Stone*, 608 F.3d at 948 n.7. Finally, the Government contends that adhering to § 1B1.13(2) is especially important given the current strain on society's first responders and the rise in certain types of crime during the Covid-19 pandemic. The Government notes that police departments in many cities have been stretched to their limits as officers have either contracted Covid-19 or been placed in quarantine and some cities, including Detroit, have seen spikes in shootings and murders. For these reasons, the Government claims that Defendant's release would endanger the community and § 1B1.13(2) prohibits reducing his sentence under § 3582(c)(1)(A).

The Court notes the Government's position but finds that, in light of: (a) the COVID-19 pandemic; (b) the enhanced health risks if Defendant remains incarcerated; and (c) the manner in which Defendant's release can be conditioned, a consideration of his danger to the community and the § 3553(a) factors does not support continued detention of Defendant. First, and most significantly, once released, Defendant will be subject to home confinement with electronic location monitoring. During this period of home confinement, between the electronic location monitoring and the other conditions of his release, Defendant's ability to commit a crime will be severely

diminished.

Second, and for several reasons, granting Defendant's release at this time is unlikely to increase any danger to the community and may actually decrease any such danger. The Court notes that, at one point, Defendant allegedly was going to be released by the BOP two-three weeks ago and, even if the Court were to deny the Motion, Defendant will be transferred to an RRC in less than six weeks. Because the Court will be modifying his sentence to time served and requiring home confinement subject to electronic location monitoring for a portion of his supervised release, Defendant will have less freedom to be actively involved in the community than he would be if transferred to an RRC on August 18, 2020.

### D.  Conclusion

The BOP recently was allowed to "lengthen the maximum amount of time for which [it] is authorized to place a prisoner in home confinement." Coronavirus Aid, Relief, and Economic Security Act (CARES Act), § 12003(b)(2), Pub. Law 116-136, 134 Stat 281, 516 (Mar. 27, 2020). The Attorney General has issued two directives to the BOP ordering the Bureau of Prisons to use the "various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." (03-26-2020 Directive to BOP, at 1; 04-03-2020 Directive to BOP, at 1). The statutory authorities include the requirements in 18 U.S.C. § 3624(c)

and (g) for home confinement in general, as well as the requirements in 34 U.S.C. § 60541(g) for some elderly and terminally ill offenders. The directives require the Bureau of Prisons to identify the inmates most at risk from COVID-19 and "to consider the totality of circumstances for each individual inmate" in deciding whether home confinement is appropriate. (03-26-2020 Directive to BOP, at 1). Finally, the directives instruct the Bureau of Prisons to consider "all at-risk inmates—not only those who were previously eligible for transfer" into home confinement. (04-03-2020 Directive to BOP, at 2).

For the reasons stated above, the Court grants Defendant's Petition for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). The Court reduces Defendant's sentence to time served, and the Court imposes a term of supervised release equal to sixty months. In order to protect the public, if Defendant has not been isolated or in quarantine for the 14 days preceding this Order, the BOP shall hold Defendant for a 14-day quarantine (reduced by the number of days, if any, Defendant has actively been in isolation and/or quarantine at the time the BOP receives this Order) before releasing Defendant. Defendant also must self-quarantine for 14 days after his release.

Defendant shall serve the first seven (7) months of his new 60 month term of supervised release under home confinement, with electronic location monitoring to

commence as soon as the Probation Department can safely install the necessary electronic monitoring equipment and upon such other conditions as the Probation Department deems necessary. The original 60 month period of supervised release is canceled.

## IV.  Conclusion

Accordingly,

IT IS ORDERED that Defendant's Petition for Compassionate Release [ECF No. 40] is GRANTED.

IT IS FURTHER ORDERED that Defendant's sentence of imprisonment is reduced to time served.

IT IS FURTHER ORDERED that the BOP shall the BOP shall hold Defendant for a 14 day quarantine (reduced by the number of days, if any, Defendant has actively been in quarantine at the time the BOP receives this Order), and Defendant shall self-quarantine for 14 days after release.

IT IS FURTHER ORDERED that, immediately upon release, Defendant shall commence a new 60 month term of supervised release, with the first seven (7) months of supervised release to served under home confinement, with electronic location monitoring to commence as soon as the Probation Department can safely install the necessary electronic monitoring equipment and upon such other conditions as the

Probation Department deems necessary.

IT IS FURTHER ORDERED that, within 24 hours of release from BOP custody, Defendant shall call the Probation Department to schedule an appointment.

IT IS FURTHER ORDERED that Defendant's original 60 month term of supervised release imposed by the Court is canceled.

IT IS ORDERED.

s/Denise Page Hood<br>DENISE PAGE HOOD<br>UNITED STATES DISTRICT JUDGE

Dated: July 27, 2020